UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CT-3012-BO

**Robert S. Ballard**,

        Plaintiff,

v.

**Dennis Daniels,** et al.,

        Defendants.

**Order &
Memorandum & Recommendation**

Plaintiff Robert S. Ballard alleges that various members of the staff of the Marury Correctional Institution violated his rights under the Eighth Amendment to the United States Constitution through their deliberate indifference to his need for medical care and by failing to provide adequate security in his housing unit. Compl., D.E. 1. He seeks monetary and punitive damages to compensate him for his alleged injuries. *Id.* at 19. Also before the court is Ballard's Motion for a Preliminary Injunction. D.E. 8. The district court has referred this matter to the undersigned Magistrate Judge for a frivolity review pursuant to 28 U.S.C. § 1915A. *See* 28 U.S.C. § 636(b)(1). After reviewing the pleadings, the undersigned recommends that the district court deny Ballard's Motion for a Preliminary Injunction and dismiss all of his claims except for his claims for deliberate indifference to serious medical needs of prisoners against Nurse Blackmon for allegedly concealing the medical records that authorized his Myelogram and air mattress, the claim against Nurse Underwood related to the skin-prep, and his claim about the failure to provide adequate safety in the chronic care unit. Ballard is ordered to submit an amendment to his complaint within 21 days of this order identifying the individuals he believes are responsible for the lack of security within the chronic care unit.

## I. Review Under 28 U.S.C. § 1915A

The Prison Litigation Reform Act of 1996 ("PLRA") requires courts to review actions filed by prisoners against governmental entities or officials. 28 U.S.C. § 1915A(a). The purpose of this review is to eliminate those claims that unnecessarily impede judicial efficiency and the administration of justice. The court must examine the pleadings, identify cognizable claims, and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from this relief. *Id.* at § 1915A(b).

In order for a plaintiff to avoid dismissal for failing to state a claim upon which relief may be granted, the plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ballard's status as a *pro se* party relaxes, but does not eliminate, the requirement that his complaint contain facially plausible claims. The court must liberally construe a *pro se* plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson* v. *BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Additionally, the court may dismiss a complaint if it seeks monetary relief from a defendant who is immunized from liability for monetary damages. This immunity can take any number of forms, including, but not limited to, immunity under the Eleventh Amendment, *see Bd. of Tr. of Univ. of Ala.* v. *Garrett*, 531 U.S. 356, 363 (2001), or common-law doctrines such as judicial, legislative, and prosecutorial immunity, *see Pierson* v. *Ray*, 386 U.S. 547 (1967).

## II. Background

### A. Ballard's Back Problems

Ballard suffers from severe and chronic back pain. Compl. at 8. In April 2014, Ballard saw Dr. Price, a neurologist, for treatment. *Id.* at 7. Dr. Price ordered a CT Myelogram and prescribed an air mattress with an air circulator. *Id.* at 7, 10. Ballard was to return to see Dr. Price in a year to undergo the procedure. *Id.* at 7. The delay was necessary because Ballard was taking blood thinners. *Id.* at 7–8. However, after a year passed, no one at the prison knew about Ballard's need for the Myelogram or the air mattress. *Id.* at 8. Nurse Blackmon told Ballard that there was nothing in his medical file about the Myelogram or the air mattress. *Id.* Ballard asked Blackmon several times to call Dr. Wilson at Central Prison Hospital. *Id*. Blackmon repeatedly told Ballard that she spoke with Dr. Wilson, but Dr. Wilson knew nothing about an appointment to see a specialist. *Id.* at 8. Ballard obtained a copy of his medical records and found the relevant orders. *Id.* Dr. Owens, a physician at Maury was then "brought up to speed about . . . the Myelogram [and the] air mattress." *Id*. Dr. Owens scheduled Ballard for the Myelogram and ordered him an air mattress and pain medications. Ballard asserts that Defendant Blackmon "knew all along," about his need for the Myelogram and the air mattress "but withheld this information." *Id.*

Ballard eventually went to UNC Hospital to undergo the Myelogram. But due to pain he suffered during the procedure, the medical staff was unable to perform the test. *Id.* at 8–9. Later, he went to Duke Hospital where, with the assistance of anesthesia, the medical staff was able to successfully perform the Myelogram. *Id.* at 9. When he awoke from the procedure, Ballard was in a great deal of pain. *Id*. He requested and received pain medication from hospital staff. *Id*.

After the procedure, a nurse told Ballard that she sent instructions to the prison physician to make pain medication available to him when he returned to Maury. *Id.* The nurse also said Ballard should be kept in the infirmary and closely watched for a few days. *Id.*

Upon his return to prison, the staff placed Ballard in his housing unit and told him that his medications would be brought to him. *Id.* But the medications never arrived, and inmates had to help Ballard to the medication line for him to receive his pain medication. *Id.* When he was finally able to obtain medication, he received the same pain medications he had been taking for several years. *Id.* Ballard submitted numerous sick calls in an unsuccessful effort to have Dr. Owens change his pain medications. *Id.* at 9–10.

On October 20, 2015, Dr. Price examined Ballard and ordered him a muscle relaxer and an air mattress. *Id.* at 10. Dr. Price also recommended that Ballard have a spinal cord stimulator placed in his back. *Id.* However, the device required charging once weekly, and Dr. Owens refused to allow Ballard to keep control of the charger or the remote. *Id.* Rather, Dr. Owens directed that the remote be kept at the nurses' station, and Ballard would be required to inform the nurse each time it needed to be adjusted. *Id.* Ballard informed Dr. Owens that he did not want the spinal cord stimulator under those conditions. *Id.* In lieu of the spinal cord stimulator, Dr. Owens increased Ballard pain medications. *Id.* Ballard was given an air mattress from Wal-Mart that malfunctioned within the first month. *Id.* at 11.

B.   **Ballard's Treatment for Bedsores**

Ballard, who uses a wheelchair, also describes sores on his arms and buttocks, diagnosed as bed sores, which "bust[ed] open" and bled. *Id.* at 18, 11. After several e-mails from the nurses, Dr. Owens had Ballard's arms and buttocks bandaged and then placed him in the infirmary to observe him. *Id.* at 11. Dr. Owens ordered that the dressings be changed daily. *Id.* at 11–12.

However, the nurses failed to apply a skin prep which protects the skin from the glue and tape in the dressings. *Id.* at 12–13. As a result, removal of the dressings was painful and pulled off layers of Ballard's skin. *Id.* at 12. Ballard screamed in pain when the dressings were removed. *Id.* This pattern continued for four days until Ballard was called to main medical where he saw Dr. Owens, who apparently corrected the problem. *Id.* at 12–13.

### C. Other Complaints

Ballard makes the following additional complaints: (1) he has been denied a PSA test for detecting cancer, *see id.* at 13, (2) he has to wait from one to six weeks to be seen on a sick call even though he is in the Chronic Care Unit, *see id.*, (3) the nurses are delaying the delivery of his pain medications by at least 30 minutes up to one-and-a-half hours, *see id.*, (4) the Chronic Care Unit does not have a nurse in the unit "24/7," *see id.* at 14, (5) there are Security Threat Group ("STG") inmates in the Chronic Care unit, *see id.* at 15–17, and (6) he has had to wait for over a year to see the dentist, *see id.* at 17.

## III. Discussion

### A. Overview of Section 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West* v. *Atkins*, 487 U.S. 42, 48 (1988); *Philips* v. *Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. *See*, *e.g.*, *Ashcroft* v. *Iqbal*, 556 U.S. 662, 675–77 (2009).

The Eighth Amendment to the Constitution, applicable to the states through the Fourteenth Amendment, prohibits, among other things, the infliction of "cruel and unusual

punishments[.]" U.S. Const. amend. VIII. The Supreme Court has explained that the Amendment protects prisoners from the "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Estelle* v. *Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted).

But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Deliberate indifference requires that a defendant know of and purposefully ignore "an excessive risk to inmate health or safety." *Farmer* v. *Brennan*, 511 U.S. 825, 837 (1994). To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier* v. *Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. *See Estelle*, 429 U.S. at 106. Moreover, while the Constitution requires a prison to provide inmates with medical care, a prisoner is not entitled to receive the treatment of his choice. *Jackson* v. *Fair*, 846 F.2d 811, 817 (1st Cir. 1988). A prisoner's difference of opinion over matters of expert medical judgment or a course of medical treatment does not rise to the level of a constitutional violation. *Wright*, 766 F.2d at 849.

### B. Official Capacity Claims

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The amendment guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Tr. of Univ. of Ala.* v. *Garrett*, 531 U.S. 356, 363 (2001). The Supreme Court has held that this immunity extends to suits brought by a state's own

citizens or the citizens of another state. *Edelman* v. *Jordan*, 415 U.S. 651, 663 (1974). Additionally, state agencies and officials sued in their official capacities are entitled to immunity under the Eleventh Amendment because they are merely alter egos of the state itself. *Regents of the Univ. of Cal.* v. *Doe*, 519 U.S. 425, 429 (1997); *Will* v. *Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Edelman*, 415 U.S. at 666–68.

Here, Ballard has named agents of the North Carolina Department of Public Safety as Defendants in their official capacity. Suits against state officers in their official capacities are considered suits against the state and are barred by the Eleventh Amendment. *See Myers v. North Carolina*, No. 5:12–CV–714–D, 2013 WL 4456848, at *3 (E.D.N.C. Aug. 16, 2013), *appeal dismissed*, 545 F. App'x 268 (2013). Although Eleventh Amendment immunity can be waived by a state or abrogated by Congress, *see Will*, 491 U.S. at 66, there is no indication that either exception is applicable here. Therefore, the Defendants, in their official capacities, are immune from Ballard's claims for monetary relief, and those claims should be dismissed.

### C. Individual Capacity Claims

Ballard also seeks to hold the Defendants liable in their individual capacities for the alleged violations of his constitutional rights.

#### 1. Eighth Amendment Claims Against Magana and Davis

The Complaint fails to allege any act taken by Defendants Magana and Davis to deprive Ballard of his constitutional rights as required for a claim under § 1983. Thus, Ballard's claims against these Defendants should be dismissed as frivolous. *See Davis* v. *Town of Holly Springs*, No. 5:00-CV-368-BR(3), 2001 WL 34013440, at *1 (E.D.N.C. Apr. 25, 2001).

### 2. Eighth Amendment Claim against Dr. Owens

Ballard argues that Dr. Owens was deliberately indifferent to his need for treatment for his back. "[T]o establish a claim of deliberate indifference to medical need, the need must be both apparent and serious [(the objective prong)], and the denial of attention must be both deliberate and without legitimate penological objective [(the subjective prong)]." *Grayson* v. *Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *Iko* v. *Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *see Estelle* v. *Gamble*, 429 U.S. 97, 104 (1976). The objective prong requires the prisoner to show that he suffered from a serious medical need, a need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241. The subjective prong requires the prisoner to show that the prison official acted with deliberate indifference. *See*, *e.g.*, *Farmer* v. *Brennan*, 511 U.S. 825, 835–36 (1994); *De'lonta* v. *Johnson*, 708 F.3d 520, 525 (4th Cir. 2013); *Iko*, 535 F.3d at 241; *Johnson* v. *Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).

Ballard acknowledges that when Dr. Owens was made aware that Dr. Price had ordered a Myelogram, he scheduled Ballard for the procedure and the procedure was conducted. When Ballard could not bear the pain of the procedure at UNC, arrangements were made for Ballard to have the procedure done under anesthesia at Duke. Upon Ballard's return to Maury, he received pain medication when he requested it. However, Ballard complains that Dr. Owens failed to follow Dr. Price's recommendations that he be housed in the infirmary upon his return to Maury.

A prison physician is not constitutionally required to follow a specialist's recommendations. *See Starling* v. *United States*, 664 F. Supp. 2d 558, 570 (D.S.C. 2009). Moreover, an inmate is not entitled to choose his course of treatment. *See De'Lonta*, 708 F.3d at 526. The Constitution requires only that prisoners received adequate medical care. *See Goodman*

v. *Johnson*, 524 F. App'x 887, 889 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1321 (2014). Ballard's factual allegations establish that Dr. Owens was attentive to Ballard's need for medical treatment for his back. Dr. Owens's decisions about the course of Ballard's treatment, including returning Ballard to his housing unit instead of putting him in the infirmary, do not establish a claim of deliberate indifference.

Ballard's complaints that Dr. Owens did not provide him the medications prescribed by Dr. Price, or that Dr. Owens has refused to change his medications, similarly fail to state a constitutional claim. *See Jacobs* v. *McVea*, Civ. A. No. 14–552, 2014 WL 2894286, at *7 (E.D. La. June 25, 2014) ("[A] prisoner has no right to be prescribed a particular medication for pain."); *Feder* v. *Sposato*, No. 11–CV–193 (JFB) (WDW), 2014 WL 1801137, at *9 (E.D.N.Y. May 7, 2014) ("[T]he failure to provide stronger pain medication does not constitute deliberate indifference."); *Starling*, 664 F. Supp. 2d at 569–70 (concluding that allegations of "ignoring specialist's recommendations, dispensing inferior pain medication, and refusing prescribed treatment" on the part of the doctor did not establish deliberate indifference).

Finally, Ballard's disagreement with Dr. Owens's decision to keep the controls for Ballard's medical devices at the nurse's station does not state a cognizable claim. *Wright* v. *Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (mere disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged").

The facts alleged in Ballard's Complaint fail to state a claim of deliberate indifference by Dr. Owens on the grounds alleged, and this claim should be dismissed.

### 3. Claim that Defendants Failed to Administer Medications Necessary to Prevent Pain

Ballard alleges that unspecified members of the prison medical staff violated his Eighth Amendment rights by regularly administering his pain medication between 30 and 90 minutes later than he believes he should have received it. Compl. at 17. This delay, while undoubtedly inconvenient, is insufficient to rise to the level of deliberate indifference, particularly in light of the need to provide medical care to the prison population as a whole. *See McManus* v. *Schilling*, No. 2:07cv74, 2008 WL 3540465, at * 6 (E.D. Va. Aug. 8, 2008) (holding that "delays in providing pain medication ranging from approximately forty-five (45) minutes to two (2) hours are not so unusually long as to provide a reasonable basis for an inference of diliberate [sic] indifference"). Therefore, this claim should be dismissed.

### 4. Eighth Amendment Claim Against Nurse Blackmon

Ballard alleges that when the time came for a Myelogram to be performed to treat his back pain, Nurse Blackmon told him there was nothing in his file about the procedure or the air mattress. However, after Ballard located the relevant medical records in his file, Dr. Owens scheduled Ballard for the Myelogram and ordered him an air mattress and pain medications. Compl. at 8. Ballard's back condition appears to qualify as a serious medical need. Thus, the court must determine whether Ballard's allegations establish that Blackmon acted with deliberate indifference in failing to disclose information in Ballard's file that would have enabled him to schedule an appointment with Dr. Price. *See*, *e.g.*, *Farmer*, 511 U.S. at 835–36; *Estelle*, 429 U.S. at 104; *De'lonta*, 708 F.3d at 525; *Iko*, 535 F.3d at 241; *Quinones*, 145 F.3d at 167. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson*, 195 F.3d at 695. Here, Ballard has alleged that Blackmon was aware of Dr. Price's orders and withheld that information. Once the information in Ballard's medical file was revealed, Dr.

Owens scheduled the prescribed appointment with Dr. Price. In light of Ballard's allegation that Blackmon willfully withheld or concealed information that resulted in him not receiving necessary treatment, this claim will be allowed to proceed.

### 5. Eighth Amendment Claim against Nurse Underwood

Ballard alleges that after he was diagnosed with bed sores on his arms and buttocks, Dr. Owens placed him in the infirmary to keep a close watch on him and ordered Duo Derm Dressing for his buttocks. However, Nurse Cullen (who is not named as a defendant) failed to apply a substance (which Ballard calls "skin-prep") that would protect his skin from the effects of removal of the tape that held on the dressing. Without the skin-prep, "layers of skin" were pulled off each time the Duo Derm Dressing was removed. This pattern went on for four days and Ballard "screamed in pain," when the dressings were changed. On the fourth night, his buttocks were burning so badly he could not stand it, and he spoke to the nurse. The next day Dr. Owens was made aware of the failure to use skin-prep before applying the dressing. Ballard names Nurse Underwood as a defendant and identifies her as one of the nurses who failed to use the skin-prep. *See* Compl. 18. He also alleges that Nurses Hughes, Spear, Duncan, "and others," were involved in the dressing of his bed sores, *see id.*, but does not name them as defendants.

Ballard's need for treatment for his bed sores appears to qualify as a serious medical condition. The question is whether Nurse Underwood "acted with deliberate indifference" to Ballard's condition. *Iko*, 535 F.3d at 241. Ballard's allegation that he "screamed in pain" when layers of his skin came off each time the dressings were removed, is sufficient to alert "even a lay person" of the necessity of a doctor's attention. *Id.* Thus, Ballard's claim against Nurse Underwood may proceed.

### 6. Eighth Amendment Claim for Failure to Protect

Ballard alleges that STG (Security Threat Group) inmates are placed in the Chronic Care Unit with sick inmates. He alleges that he is confined to a wheelchair and fears for his safety. He alleges that there have been 8 to 10 stabbings in the Chronic Care Unit this year. *See* Compl. at 15–17. A prison official can violate the Eighth Amendment "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The Supreme Court has expressly left open the question of "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes . . . ." *Id.* at 834 n.3. Therefore, Ballard may have a viable claim for a violation of his Eight Amendment rights. *See White* v. *Smith*, 140 F. App'x. 464, 464 (4th Cir. 2005) (holding that a plaintiff's Eighth Amendment claim "that Defendants failed to place him in protective custody might present an arguable basis in the Eighth Amendment") (citing *Farmer*, 511 U.S. at 837).

However, Ballard's Complaint does not specifically identify the members of the prison staff that are responsible for the allegedly unsafe conditions in the Chronic Care Unit. Therefore, the court will allow this claim to proceed, but require Ballard to file an amendment to his complaint specifying the individuals who he believes are responsible for this constitutional violation and explaining their involvement in the tortious conduct. Before submitting his amendment, Ballard should take note of the requirements outlined in this order to hold a party individually liable for constitutional violations.

### 7. Other Claims

The remainder of Ballard's Complaint consists of generalized complaints about the medical care provided to him at Maury. As to Ballard's claim that he has not received a PSA test

to detect cancer, a failure to provide preventive tests is not "cruel and unusual punishment" within the prohibition of the Eighth Amendment. *See Patterson* v. *Lilley*, No. 02 Civ.6056 NRB, 2003 WL 21507345, at *4 n.3 (S.D.N.Y. June 30, 2003) (defendants could be held deliberately indifferent only to an existing serious medical condition, not a speculative future medical injury); *see also Walker* v. *Willouby*, Civil Action No. 06-4204 (MLC), 2006 WL 2927624, at *4 (D.N.J. Oct. 11, 2006).

Ballard's claims that he must wait to be seen on sick call and that he has had to wait over a year to see a dentist, without more, fail to allege a constitutional violation. *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) (in order for a delay in medical treatment to rise to the level of an Eighth Amendment violation, the delay must result in some "substantial harm" to the patient).

Ballard's claims that the Chronic Care Unit does not have a nurse in the unit "24/7," fails to identify a serious medical need that was ignored by the Defendants.

Thus, it is recommended that the district court should dismiss these additional issues as frivolous.

## IV. Claim for Injunctive Relief

Ballard requests injunctive relief to require the Defendants to administer his medications as prescribed. Mem. Supp. Mot. Prelim. Inj., D.E. 8–1. The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same. *See*, *e.g.*, *U.S. Dep't of Labor* v. *Wolf Run Mining Co.*, 452 F.3d 275, 281 n. 1 (4th Cir. 2006). A court may grant a temporary restraining order or a preliminary injunction if the moving party demonstrates the following: (1) "that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4)

that an injunction is in the public interest." *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc.* v. *Fed. Election Comm.*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds*, 559 U.S 1089 (2010), *reissued in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Injunctive relief, such as the issuance of a preliminary injunction, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to this relief. *Mazurek* v. *Armstrong*, 520 U.S. 968, 972 (1997); *see also MicroStrategy, Inc.* v. *Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances."). This standard is particularly true in a case such as this one where the plaintiff seeks a preliminary injunction that is mandatory in nature instead of prohibitory. "[A] mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *Sun Microsystems, Inc.* v. *Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517, 525 (4th Cir. 2003), *abrogated on other grounds by eBay Inc.* v. *MercExchange, L.L.C.*, 547 U.S. 388 (2006).

Here, in light of the court's rulings on Ballard's claim about a delay in providing him with medication, he has failed to demonstrate a likelihood of success on the merits on the claim that would entitle him to injunctive relief. Therefore, it is recommended that the district court deny Ballard's Motion for Preliminary Injunction.

**V. Conclusion**

For the reasons stated above, the court recommends that the district court dismiss the following claims: Ballard's Eighth Amendment claims against the Defendants in their official

capacities; Ballard's claims against Defendants Magana and Davis in their individual capacities; Ballard's claim against Dr. Owens for deliberate indifference to his need for medical treatment for his back; and Ballard's claims that he has not been provided a PSA test to screen for cancer, that he must wait to be seen on sick call, that he has waited over a year to see a dentist, and that the Chronic Care Unit does not have a nurse in the unit "24/7." Furthermore, the district court should deny Ballard's Motion for a Preliminary Injunction.

The court will allow Ballard's following claims to proceed: deliberate indifference to serious medical needs of prisoners against Nurse Blackmon for allegedly concealing the medical records that authorized his Myelogram and air mattress and against Nurse Underwood related to the skin-prep; and failure to protect. Ballard shall file an amendment identifying the individuals he believes are responsible for the failure to protect within 21 days of the date of this order. The Clerk of Court shall continue management of this matter with respect to those claims.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on plaintiff. Plaintiff shall have until 14 days after service of the Memorandum and Recommendation on plaintiff to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See*, *e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If plaintiff does not file written objections to the Memorandum and Recommendation by the foregoing deadline, plaintiff will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without this review. In addition, plaintiff's failure to file written objections by the foregoing deadline will bar plaintiff from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright* v. *Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated:  January 13, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge