IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CT-3012-BO

| ROBERT S. BALLARD, | |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| DENNIS DANIELS, et al., | |
| Defendants. | |

This matter is before the court on the Order and Memorandum and Recommendation ("Order and M&R") of United States Magistrate Judge Robert T. Numbers, II, pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b) [D.E. 16]. The court ADOPTS the Order and M&R. Additionally, the court allows Ballard's motion to amend his Complaint to add parties and claims to the lawsuit in the manner set out below.

## BACKGROUND

On January 19, 2016, plaintiff Robert S. Ballard ("plaintiff" or "Ballard") filed a Complaint pursuant to 42 U.S.C. § 1983 seeking monetary and punitive damages, alleging that various members of the staff of the Maury Correctional Institution violated his rights under the Eighth Amendment to the United States Constitution through their deliberate indifference to his need for medical care and by failing to provide adequate security in his housing unit [D.E. 1]. Also before the court is Ballard's Motion for a Preliminary Injunction [D.E. 8]. Ballard made the following claims: (1) Dr. Owens was inattentive to his need for medical treatment for his back, refused to follow the post-operative recommendation of medical specialist Dr. Price,

refused to provide him the medication prescribed by Dr. Price, refused to change his medications, and refused to allow him to keep the controls for his medical device; (2) unspecified members of the prison medical staff failed to regularly administer his pain medication; (3) Nurse Blackmon concealed his medical records that authorized his Myelogram and air mattress; (4) Nurse Underwood was deliberately indifferent by refusing to apply a skin-preparation when dressing his bed sores; (5) prison officials have failed to protect him from STG (Security Threat Group) inmates who are placed in the Chronic Care Unit with sick inmates; (6) he has not received a PSA test to detect cancer; (7) he must wait to be seen on sick call and has had to wait over a year to see a dentist; and (8) the Chronic Care Unit does not have a nurse in the unit "24/7." See Compl. [D.E. 1]. Ballard also requests injunctive relief to require the defendants to administer his medications as prescribed. See Mem. Supp. Mot. Prelim. Inj. [D.E. 8-1].

On January 13, 2017, Judge Numbers issued his Order and M&R and allowed two of Ballard's claims to proceed: his deliberate indifference claim against Nurse Blackmon for allegedly concealing his medical records and his deliberate indifference claim against Nurse Underwood related to the failure to use skin-prep in dressing his bed sores. As to Ballard's claim about the failure to provide adequate safety in the chronic care unit, Judge Numbers directed Ballard to submit an amendment to his Complaint within 21 days of the Order and M&R identifying the individuals he believes are responsible for the lack of security within the chronic care unit. Judge Numbers recommended that the court dismiss the remaining claims and deny Ballard's Motion for a Preliminary injunction.

Thus, Ballard's Amended Complaint was due on February 3, 2017 and his objections were due on January 30, 2017. See Order and M&R [D.E. 16]. On January 31, 2017, one day

2

after his objections were due, Ballard mailed, for filing, a request for an extension of time "to respond to the Order and M&R," see [D.E.17, 17-1]. The Clerk granted Ballard an extension to March 3, 2017, to respond [D.E. 18]. On February 13, 2017, 10 days after his deadline to file an Amended Complaint, Ballard filed his Amended Complaint [D.E. 19] accompanied by 17 pages of exhibits [D.E. 19-1]. In the Amended Complaint, Ballard makes substantial arguments relating to his claims, which the court construes as his objections to the Order and M&R. Ballard has failed to file any further objections to the Order and M&R by the 3 March 2017 deadline. Although Ballard failed to file his Amended Complaint by February 3, 2017, the court considers the Amended Complaint as timely. As shown below, the court adopts the Order and M&R.

In the Order and M&R, Judge Numbers summarized the factual allegations as follows:

### A. Ballard's Back Problems

Ballard suffers from severe and chronic back pain. Compl. at 8. In April 2014, Ballard saw Dr. Price, a neurologist, for treatment. *Id.* at 7. Dr. Price ordered a CT Myelogram and prescribed an air mattress with an air circulator. *Id.* at 7, 10. Ballard was to return to see Dr. Price in a year to undergo the procedure. *Id.* at 7. The delay was necessary because Ballard was taking blood thinners. *Id.* at 7–8. However, after a year passed, no one at the prison knew about Ballard's need for the Myelogram or the air mattress. *Id.* at 8. Nurse Blackmon told Ballard that there was nothing in his medical file about the Myelogram or the air mattress. *Id.* Ballard asked Blackmon several times to call Dr. Wilson at Central Prison Hospital. *Id.* Blackmon repeatedly told Ballard that she spoke with Dr. Wilson, but Dr. Wilson knew nothing about an appointment to see a specialist. *Id.* at 8. Ballard obtained a copy of his medical records and found the relevant orders. *Id.* Dr. Owens, a physician at Maury was then "brought up to speed about . . . the Myelogram [and the] air mattress." *Id.* Dr. Owens scheduled Ballard for the Myelogram and ordered him an air mattress and pain medications. Ballard asserts that Defendant Blackmon "knew all along," about his need for the Myelogram and the air mattress "but withheld this information." *Id*

Ballard eventually went to UNC Hospital to undergo the Myelogram. But due to pain he suffered during the procedure, the medical staff was unable to perform the test. *Id.* at 8–9. Later, he went to Duke Hospital where, with the assistance of anesthesia, the medical staff was able to successfully perform the

3

Myelogram. *Id.* at 9. When he awoke from the procedure, Ballard was in a great deal of pain. *Id.* He requested and received pain medication from hospital staff. *Id.*

After the procedure, a nurse told Ballard that she sent instructions to the prison physician to make pain medication available to him when he returned to Maury. *Id.* The nurse also said Ballard should be kept in the infirmary and closely watched for a few days. *Id.*

Upon his return to prison, the staff placed Ballard in his housing unit and told him that his medications would be brought to him. *Id.* But the medications never arrived, and inmates had to help Ballard to the medication line for him to receive his pain medication. *Id.* When he was finally able to obtain medication, he received the same pain medications he had been taking for several years. *Id.* Ballard submitted numerous sick calls in an unsuccessful effort to have Dr. Owens change his pain medications. *Id.* at 9–10.

On October 20, 2015, Dr. Price examined Ballard and ordered him a muscle relaxer and an air mattress. *Id.* at 10. Dr. Price also recommended that Ballard have a spinal cord stimulator placed in his back. *Id.* However, the device required charging once weekly, and Dr. Owens refused to allow Ballard to keep control of the charger or the remote. *Id.* Rather, Dr. Owens directed that the remote be kept at the nurses' station, and Ballard would be required to inform the nurse each time it needed to be adjusted. *Id.* Ballard informed Dr. Owens that he did not want the spinal cord stimulator under those conditions. *Id.* In lieu of the spinal cord stimulator, Dr. Owens increased Ballard pain medications. *Id.* Ballard was given an air mattress from Wal-Mart that malfunctioned within the first month. *Id.* at 11.

### B.     Ballard's Treatment for Bedsores

Ballard, who uses a wheelchair, also describes sores on his arms and buttocks, diagnosed as bed sores, which "bust[ed] open" and bled. *Id.* at 18, 11. After several e-mails from the nurses, Dr. Owens had Ballard's arms and buttocks bandaged and then placed him in the infirmary to observe him. *Id.* at 11. Dr. Owens ordered that the dressings be changed daily. *Id.* at 11–12.

However, the nurses failed to apply a skin prep which protects the skin from the glue and tape in the dressings. *Id.* at 12–13. As a result, removal of the dressings was painful and pulled off layers of Ballard's skin. *Id.* at 12. Ballard screamed in pain when the dressings were removed. *Id.* This pattern continued for four days until Ballard was called to main medical where he saw Dr. Owens, who apparently corrected the problem. *Id.* at 12–13.

4

### C. Other Complaints

Ballard makes the following additional complaints: (1) he has been denied a PSA test for detecting cancer, *see id.* at 13, (2) he has to wait from one to six weeks to be seen on a sick call even though he is in the Chronic Care Unit, *see id.*, (3) the nurses are delaying the delivery of his pain medications by at least 30 minutes up to one-and-a-half hours, *see id.*, (4) the Chronic Care Unit does not have a nurse in the unit "24/7," *see id.* at 14, (5) there are Security Threat Group ("STG") inmates in the Chronic Care unit, *see id.* at 15–17, and (6) he has had to wait for over a year to see the dentist, *see id.* at 17.

Order and M&R [D.E. 16] 3–5.

## STANDARD OF REVIEW

"The Federal Magistrates Act requires a district court to make a *de novo* determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (emphasis, alteration, and quotation omitted); see 28 U.S.C. § 636(b). Absent a timely objection, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendations. Diamond, 416 F.3d at 315 (quotation omitted). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

The court has reviewed the Order and M&R, the record, and Ballard's objections. As for those portions of the Order and M&R to which Ballard made no objection, the court is satisfied that there is no clear error on the face of the record.

5

## DISCUSSION

A.  **Amended Complaint**

   1.  **Identify Defendants in Failure to Protect Claim**

In response to Judge Numbers' order to file an amended complaint to name the individuals he believes are responsible for the failure to provide adequate safety in the chronic care unit, Ballard states: "Defendants are all responsible for lack of security in the Blue Unit which is supposed to be a Chronic Care Unit. Daniels, Watson, Goodman, Casino, Wood, Blackmon, ADA Coordinator [Ms. Jones], Unit Manager and Assist Unit Manager [Burgess] ... all knew what was going on and did nothing to provide a safe and secure housing for Chronic Care inmates[.]" See Am. Compl. at 12–14. Ballard alleges that there have been "over 100 [stabbings] within a year." Id. at 13.

The Eighth Amendment guarantees that individuals will not be subjected to "cruel and unusual punishments." U.S. Const. amend. VIII. In the prison setting, this provision prohibits officials from acting with "deliberate indifference" towards a "substantial risk of serious harm to an inmate," such as the risk of "violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 828, 832-34 (1994).[1] Deliberate indifference can be established only by proof that a prison official knew of and chose to disregard an "excessive risk to inmate health or safety." Id. at 837. In other words, to be liable, a prison official must have: (1) been subjectively "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and (2) actually reached that inference. Id.

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference

---

[1] The Supreme Court has expressly left open the question of "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes . . . ." Id. at 834 n.3.

6

from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Id. at 842-43 (internal citations and quotations omitted). Based on Ballard's allegations that the STG inmates have committed stabbings in the Chronic Care Unit and that defendants Daniels, Watson, Goodman, Casino, Wood, Blackmon, ADA Coordinator Ms. Jones, and Assistant Unit Manager Burgess were aware of the problem but failed to provide safe and secure housing for the Chronic Care inmates, Ballard may proceed with his Eighth Amendment claim against these defendants in their individual capacities.[2] The Clerk is DIRECTED to add ADA Coordinator Ms. Jones and Assistant Unit Manager Burgess as defendants in this action.

### 2. Add Parties to Deliberate Indifference Claim

Ballard alleges that Nurse Underwood was deliberately indifferent to his serious medical need by refusing to apply a skin prep when dressing his bed sores . Compl. [D.E. 1] 18. Judge Numbers allowed this claim to proceed. Order and M&R at 11. Ballard now additionally names Nurses Cullen, Spears, Pressley, and Hughes who, he claims, are also responsible for this constitutional violation. See Am. Compl. at 1, 5–6. The court construes these allegations as a motion to amend the action to name the additional defendants. Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course within ... 21 days after serving it." For any subsequent amendment, a party must seek leave from the Court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so

---

[2] Ballard does not name Jones or Burgess as defendants. See Am. Compl. at 1.

7

Case 5:16-ct-03012-BO Document 20 Filed 03/10/17 Page 7 of 13

requires." Id. Here, because Ballard's Complaint has not yet been served on defendants, Ballard may amend his Complaint to add the foregoing defendants. As no defendant has been served, the court finds no prejudice. The Clerk of Court is directed to add Nurses Cullen, Spears, Pressley, and Hughes as defendants in their individual capacities in this action.

**B.     Objections Relating to Dr. Owens**

Ballard objects to Judge Numbers' conclusion that his Complaint fails to state a claim of deliberate indifference by Dr. Owens, (1) for failure to provide the Myelogram and an air mattress at the time they were approved, (2) for failure to house him in the infirmary for 48–72 hours after his surgery, (3) for failure to provide him the medication prescribed by Dr. Price, and (4) for his refusal to allow Ballard to keep control of the charger or the remote for a spinal cord stimulator to be placed in his back. Am. Compl. at 2–4, 10–12.

Judge Numbers found that Ballard failed to show that Dr. Owens was deliberately indifferent for failure to provide the Myelogram and the air mattress because "when Dr. Owens was made aware that Dr. Price had ordered a Myelogram, he scheduled Ballard for the procedure and the procedure was conducted." Order and M&R at 8.[3] Ballard argues that if Dr. Owens had checked his medical records, he would have known about the Myelogram and air mattress. Am. Compl. at 2. However, Dr. Owens' failure to check his record constitutes at most, negligence. Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). This objection is overruled.

Next, Ballard argues that Judge Numbers erred in concluding that Dr. Owens was not deliberately indifferent when he decided not to house Ballard in the infirmary for 48–72 hours after his surgery or to provide him the medication prescribed by Dr. Price. Am. Comp. at 11.

---

[3] Ballard acknowledges he received an air mattress, however complains about its quality. Am. Compl. at 3–4.

However, a prison physician is not constitutionally required to follow a specialist's recommendations. See Starling v. United States, 664 F. Supp. 2d 558, 570 (D.S.C. 2009). Nor is an inmate entitled to choose his course of treatment. See D'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013). The Constitution requires only that prisoners received adequate medical care. See Goodman v. Johnson, 524 F. App'x 887, 889 (4th Cir. 2013).

Ballard's own allegations show that Dr. Owens was attentive to Ballard's need for medical treatment for his back, provided him pain medication, sent him to medical specialists, and administered follow-up care. "[A] prisoner has no right to be prescribed a particular medication for pain." Jacobs v. McVea, Civ. A. No. 14–552, 2014 WL 2894286, at *7 (E.D. La. June 25, 2014); see also Feder v. Sposato, No. 11–CV–193 (JFB) (WDW), 2014 WL 1801137, at *9 (E.D.N.Y. May 7, 2014) ("[T]he failure to provide stronger pain medication does not constitute deliberate indifference."); Starling, 664 F. Supp. 2d at 569–70 (concluding that allegations of "ignoring specialist's recommendations, dispensing inferior pain medication, and refusing prescribed treatment" on the part of the doctor did not establish deliberate indifference). Judge Numbers correctly concluded that that Ballard failed to show deliberate indifference in relation to Dr. Owens' post-operative treatment. This objection is overruled.

Finally, Judge Numbers correctly concluded that Ballard's disagreement with Dr. Owens' decision to keep the controls for Ballard's medical devices at the nurse's station does not state a cognizable claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (mere disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged."). This objection is overruled.

Ballard incorrectly asserts that Jones v. Simek, 193 F.3d 485 (7th Cir. 1999), supports his position. Jones suffered from Reflex Sympathetic Dystrophy, as a result of which he lost the use

9

of his right arm and hand. Prison physician Dr. Lopez saw Jones but was hostile and insensitive, refused to prescribe pain medication, and told Jones that he would refer him to a specialist but none was provided. When Jones was finally seen by a neurosurgeon, Dr. Lopez disregarded the specialist's advice. Jones is not comparable to Ballard's case, where Dr. Owens was attentive to Ballard's need for medical treatment for his back, provided him pain medication, sent him to medical specialists, and administered follow-up care. In Hughes v. Joliet Correctional Center, 931 F.2d 425 (7th Cir. 1991), cited by Ballard, Hughes lost feeling in his legs and instead of treatment, Hughes was transferred to the psychiatric ward. Hughes is not comparable to Ballard's case and does not help him.

Judge Numbers correctly that in light of the attention and medical care Ballard has received for his back, there is no indication in the record that Dr. Owens was deliberately indifferent to his need for treatment to his back. Order and M&R at 9. These objections are overruled.

### C. Generalized Claims against Medical Staff

Ballard objects to Judge Numbers' conclusion that his complaints regarding the wait-time for medical appointments and the delay in receiving dental treatment fail to state constitutional violations. Am. Compl. at 6–8. Judge Numbers concluded that "Ballard's claims that he must wait to be seen on sick call and that he has had to wait over a year to see a dentist, without more, fail to allege a constitutional violation." Order and M&R at 13. In order for a delay in medical treatment to rise to the level of an Eighth Amendment violation, the delay must result in some "substantial harm" to the patient. See Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008). While Ballard argues that such delays amount to deliberate indifference, he fails to specifically identify any substantial harm, but instead, essentially repeats the arguments made in

10

his original Complaint. Merely reiterating the same arguments made in the pleading submitted to the magistrate judge does not warrant *de novo* review. See United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007); Veney v. Astrue, 539 F. Supp. 2d 841, 846 (W.D.Va. 2008). Judge Numbers correctly concluded that Ballard's allegations fail to state a constitutional violation and this objection is overruled.

Ballard also objects to Judge Numbers' conclusion that the delay by staff in administering his pain medication fails to rise to the level of deliberate indifference. Am. Compl. at 7–8. However, Judge Numbers correctly concluded that this claim fails to state a constitutional violation, as "delays in providing pain medication ranging from approximately forty-five (45) minutes to two (2) hours are not so unusually long as to provide a reasonable basis for an inference of diliberate [sic] indifference." McManus v. Schilling, No. 2:07cv74, 2008 WL 3540465, at *6 (E.D. Va. Aug. 8, 2008). In his objections, Ballard merely cites two instances where his medical was delayed. Am. Compl. at 9–10. This objection is overruled.

### C. New Claims Against Dr. Owens

Ballard also seeks to add additional claims against Dr. Owens. Am. Compl. at 11–12. He alleges that Dr. Owens violated his constitutional rights by failing to have him transferred to the hospital at Central Prison, by providing him a 2-inch Low Profile Roho cushion for his wheelchair instead of a 4-inch High Profile cushion, and by withholding medication in retaliation against Ballard for questioning Dr. Owens' treatment decisions. Am. Compl. at 11–12. The court construes these allegations as a motion to amend the Complaint to add new claims, see Fed. R. Civ. P. 15(a)(2), and allows the motion to amend.

As previously stated, Ballard's disagreement with Dr. Owens regarding Ballard's medical care does not, without more, state a § 1983 claim. Wright, 766 F.2d at 849. Thus, Dr. Owens'

11

decisions not to have Ballard transferred to Central Prison and to provide Ballard with a 2-inch cushion do not state constitutional violations. These claims are dismissed.

Although Ballard appears to suggest that Dr. Owens threatened to discontinue his pain medications in retaliation for Ballard's questioning Dr. Owens' treatment or filing the instant lawsuit, see Am. Compl. at 11–12, Ballard does not allege that the medications were actually discontinued. See id. Ballard's allegation against Dr. Owens appears to represent his general dissatisfaction with Dr. Owens, and as such, fails to state a constitutional claim. This claim is dismissed.

## CONCLUSION

The court ADOPTS the Magistrate Judge's Order and M&R [D.E.16] and Plaintiff's objections [D.E. 19] are OVERRULED. As ORDERED by Judge Numbers, Plaintiff's deliberate indifference claims against Nurse Blackmon in her individual capacity for concealing his medical records, and against Nurse Underwood in her individual capacity for improper treatment of Plaintiff's bed sores, are allowed to proceed. Additionally, the court orders the following:

1. As to Plaintiff's failure to protect claim, Plaintiff's claim against Mr. Daniels, Assistant Superintendent Watson, Assistant Superintendent Goodman, Medical Department Head Casino, Nurse Supervisor Wood, Nurse Blackman, ADA Coordinator Ms. Jones, and Assistant Unit Manager Burgess, in their individual capacities is ALLOWED to proceed. The Clerk is DIRECTED to add ADA Coordinator Ms. Jones and Assistant Unit Manager Burgess as defendants in the action;

2. As to Plaintiff's claim of deliberate indifference arising from the improper treatment of Plaintiff's bed sores, Plaintiff's motion to amend his Complaint to add Nurses Cullen, Spears,

12

Pressley, and Hughes as defendants in their individual capacities is ALLOWED. The Clerk is DIRECTED to add these individuals as defendants in the action;

    3.    Plaintiff's remaining claims against all Defendants are DISMISSED; and

    4.    Plaintiff's Motion for a Preliminary Injunction [D.E. 8] is DENIED.

SO ORDERED. This _9_ day of March, 2017.

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge